UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE NIFONG,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 12-07936 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　Plaintiff Alice Nifong filed this action on September 14, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on September 27 and October 12, 2012. (Dkt. Nos. 6, 7.) On April 1, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

**PROCEDURAL BACKGROUND**

　　On October 21, 2009, Nifong filed an application for disability insurance benefits, alleging an onset date of March 1, 2007. Administrative Record ("AR")

22. The application was denied initially and on reconsideration. AR 22, 64, 68. Nifong requested a hearing before an Administrative Law Judge ("ALJ"). AR 83. On March 8, 2011, the ALJ conducted a hearing at which Nifong and a vocational expert ("VE") testified. AR 43-63. On March 10, 2011, the ALJ issued a decision denying benefits. AR 22-29. On July 24, 2012, the Appeals Council denied the request for review. AR 1-6. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Nifong has the severe impairments of rheumatoid arthritis, status post fracture of the left knee, and obesity. AR 24. She does not have an impairment or combination of impairments that meets or equals one of the listed impairments. AR 25. She has the residual functional capacity ("RFC") to perform light work, except she can stand or walk for two hours in an eight hour day; sit for six hours in an eight hour day; occasionally climb ladders, ropes, scaffolds, ramps or stairs; occasionally balance, stoop, kneel, crouch or crawl; and frequently handle and finger bilaterally. *Id.* She is capable of performing her past relevant work as a general clerk as actually performed at the sedentary level. AR 28.

### C. Treating Physician

Nifong contends the ALJ did not provide specific, legitimate reasons for discounting the opinion of Dr. Wallace, her treating rheumatologist.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57 (citation and quotation marks omitted).

The record contains two treating source statements from Dr. Wallace. In a letter dated October 15, 2009, Dr. Wallace stated that Nifong "is permanently, totally disabled due to rheumatoid arthritis." AR 290. In an Arthritis Residual Functional Capacity Questionnaire dated March 1, 2011, Dr. Wallace stated that Nifong had severe pain in the right ankle, and moderate to severe pain in the left knee and in both hands. AR 283, 289. Nifong's pain would frequently interfere with her attention and concentration. AR 284. She was "[c]apable of low stress jobs." AR 285. She could walk one block without rest or severe pain. She could sit for 45 minutes at a time and for at least six hours in a day. She could stand or walk for 20 minutes at a time or less than two hours in a day. AR 285-86. She must walk every 60 minutes for 15 minutes. She must be able to shift positions at will, and would need to take unscheduled breaks every 60 minutes. AR 286. She could rarely lift and carry less than ten pounds, and could never lift and carry ten pounds or more. AR 287. She could rarely twist, stoop (bend) or climb stairs. She could never crouch or climb ladders. *Id.* She has significant limitations in doing repetitive reaching, handling or fingering. She can use her hands to grasp, turn or twist objects for 20% of the day, use her fingers for fine manipulation for 5% of the day, and use her arms for reaching for 40% of the day. AR 288.

Dr. Wallace's opinion was contradicted by other medical evidence. Dr. Moazzaz, who performed an orthopaedic consultation on December 31, 2009, opined that Nifong could lift and carry 50 pounds occasionally and 25 pounds

frequently; could stand, walk or sit six hours out of an eight hour workday; could occasionally climb, stoop, kneel or crouch; and could frequently use her hands for fine and gross manipulative movements. AR 27, 252. Dr. Vaghaiwalla, a State Agency physician, found that Nifong could perform light work with the same restrictions identified by Dr. Moazzaz. AR 27, 260.

The ALJ discussed Dr. Wallace's source statements and gave them "little weight." AR 27-28. He found the source statements "self-contradictory and inconsistent with [Nifong's] own statements concerning her capacity to perform daily activities." AR 28. Although Dr. Wallace indicated Nifong was permanently and totally disabled, Dr. Wallace described her prognosis as "fair." AR 27, 283, 290. Dr. Wallace's limitations conflicted with Nifong's ability to vacuum once a week, dust, sweep every few days, shop for one to two hours, pick up her grandchildren from school and run errands with them, and cook most evenings. AR 28, 47-50. The ALJ gave "great weight" to the opinions of Dr. Moazzaz and Dr. Vaghaiwalla, finding them consistent with the objective evidence and Nifong's statements regarding her capacity to perform daily activities. AR 28.

A treating physician's opinion as to the ultimate determination of disability is not binding on an ALJ. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). "[I]nconsistencies and ambiguities noted by the ALJ represent specific and legitimate reasons" for rejecting a physician's opinion. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ gave specific and legitimate reasons for discounting Dr. Wallace's opinions. Whereas Dr. Wallace opined that Nifong could stand or walk for 20 minutes at a time, Nifong testified that she could clean the dishes for half and hour and go clothes shopping at a shopping center for one to two hours at a time. AR 28, 50, 54, 286. Nifong's statements regarding her ability to perform

housework and yardwork, cook, drive, and shop were inconsistent with the significant functional limitations identified by Dr. Wallace. The ALJ did not err.[2]

### D.  Examining Physician

Nifong argues that the ALJ erred in relying on Dr. Moazzaz's opinion.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 631. When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

The ALJ considered and discussed Dr. Moazzaz's opinion. AR 27-28. On December 31, 2009, Dr. Moazzaz performed an orthopaedic consultation of Nifong, who complained of right ankle pain, left knee pain, and bilateral wrist and hand pain. AR 248. Dr. Moazzaz found that Nifong ambulates with an antalgic gait on the right and can squat, heel walk and toe walk without assistive devices. AR 250. There was mild soft-tissue swelling of the MCP joints and PIP joints of the bilateral hands consistent with rheumatoid disease, no warmth or tenderness to palpation at the distal radius or ulna, full range of motion, and no Swan Neck Deformity. *Id.* Grip strength was 11/16/14 in the right and 10/10/10 in the left. AR 249. There was a well-healed surgical incision anteriorly consistent with previous patellar surgery in the right knee, no gross deformity, mild joint effusion, no warmth, full range of motion, negative Lachman, Anterior Drawer and Posterior Drawer Tests, stable to varus and valgus stress testing at 0 and 30 degrees of flexion, no tenderness to palpation along the medial or lateral joint

---

[2] The Commissioner argues that the ALJ properly assigned little weight to Dr. Wallace's opinion because it was inconsistent with his earlier treatment notes. Because the ALJ did not articulate this reason, the court cannot consider it. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 n.2 (9th Cir. 2008); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

6

1  lines, negative McMurray Test, positive patellofemoral crepitus and patellofemoral
2  grind, and negative apprehension test.  AR 250-51.  There was a large joint
3  effusion of the right ankle, no warmth, tenderness to palpation over the tibiotalar
4  and subtalar joints, diminished range of motion with dorsiflexion to 20 degrees
5  and plantar flexion to 20 degrees.  AR 251.  There was 5/5 motor strength in the
6  upper and lower extremities.  *Id.*  Sensation was intact in the upper and lower
7  extremities.  *Id.*  Deep tendon reflexes remained 2+ bilaterally.  AR 251-52.

8      Dr. Moazzaz diagnosed Nifong with rheumatoid arthritis with polyarthralgia
9  and status post left patellar fracture with degenerative changes.  AR 252.  Dr.
10 Moazzaz found Nifong could lift and carry 50 pounds occasionally and 25 pounds
11 frequently; stand, walk or sit six hours out of an eight hour workday; occasionally
12 climb, stoop, kneel or crouch; and frequently use hands for fine and gross
13 manipulative movements.  *Id.*  State Agency physician, Dr. Vaghaiwalla, found
14 Nifong capable of light work with the same limitations.  AR 260.

15     The ALJ gave "great weight" to the opinions of Dr. Moazzaz and the State
16 Agency physician on the ground that they "agree with the objective findings in the
17 record, as well as [Nifong's] statements regarding her capacity to perform daily
18 activities."  AR 28.  The ALJ found Nifong to be capable of light work with
19 limitations.  AR 25.

20     Nifong argues that the ALJ erred in relying on Dr. Moazzaz's opinion
21 because Dr. Moazzaz's "conclusions are inconsistent with his own objective
22 findings on physical examination."  JS 6-7.  Nifong notes Dr. Moazzaz's findings
23 on the Jamar grip test, the swelling of joints of the bilateral hands consistent with
24 rheumatoid disease, antalgic gait on the right, a large joint effusion of the right
25 ankle with tenderness to palpation, and diminished range of motion of the right
26 ankle and foot.  Dr. Moazzaz found that Nifong had full strength and full sensation
27 in her upper and lower extremities.  AR 251.  Contrary to Nifong's contention, Dr.
28 Moazzaz considered Nifong's complaints of pain.  AR 248.  "[T]he mere existence

7

of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Further, Dr. Moazzaz's opinion constitutes substantial evidence. *See Orn*, 495 F.3d at 631. Even assuming Dr. Moazzaz's conclusions that Nifong could lift and carry 50 pounds occasionally and 25 pounds frequently and could stand and walk six hours out of an eight hour workday were inconsistent with his findings, the ALJ did not err. The ALJ did not adopt those portions of Dr. Moazzaz's opinion in making the RFC determination. AR 25.

### E. Credibility

Nifong contends the ALJ failed to properly assess her credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Nifong's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 26.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental

8

conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13)[3] (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Nifong's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. AR 26. The ALJ relied on three reasons: (1) the objective evidence did not support the degree of disability alleged; (2) Nifong's statements were inconsistent with her activities of daily living; and (3) Nifong stopped working because she retired. AR 26-28.

### 1. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that Nifong underwent an open reduction and internal fixation of a complicated left patellar fracture in April 2007. AR 26, 198. Upon discharge, Nifong felt "well" and her rheumatoid arthritis was "stable." AR 26, 198. Nifong reported that her left leg was "getting stronger" in July 2007. AR 26, 221. In September 2007, Nifong had "weaned herself out of her brace," had completed physical therapy, and felt "well" with "no new

---

[3] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

9

complaints." AR 26, 220. X-rays of her left knee showed a well-healed fracture of the left patella. AR 26, 220, 264. In January 2008, Nifong reported that she could ride a bicycle and walk without a cane, although she still had some stiffness and swelling in her right ankle. AR 27, 265. She reported that she "stopped her Enbrel due to financial constraints" and had "not seen her rheumatologist in quite some time." AR 27, 265. A physical examination of her left knee showed that her surgical wound healed well. AR 265. She had full extension of the knee and approximately 95 degrees of knee flexion. AR 27, 265. She had pain with palpation along the lateral and medial joint lines, but no pain with palpation of the patella. AR 27, 265. A physical examination of her right ankle showed that she had significant bogginess in the anterior and lateral aspect, but no crepitus with motion or neurologic deficits. AR 27, 265. She had some discomfort with range of motion. AR 27, 265. X-rays of the left knee showed a well-healed fracture of the patella with osteoarthritis. AR 27, 265. Dr. Harris, a treating physician, noted Nifong had "no restrictions with respect to her left knee" and was experiencing a flare-up of her rheumatoid arthritis in her right ankle. AR 27, 265-66.

Dr. Moazzaz found mild soft-tissue swelling of the MCP joints and PIP joints of the bilateral hands, but found no warmth, tenderness to palpation or Swan Neck Deformity. AR 27, 250. Nifong had full range of motion in the bilateral hands. AR 27, 250. Dr. Moazzaz found mild joint effusion and positive patellafemoral crepitus and positive patellafemoral grind in the left knee, but the knee had full range of motion and no tenderness to palpation, as well as negative Lachman, Anterior Drawer, Posterior Drawer, McMurray, and Apprehension Tests. AR 27, 250-51. Dr. Moazzaz found large joint effusion, decreased range of motion, and tenderness to palpation over the tibiotalar and subtalar joints of the right ankle. AR 27, 251. Dr. Moazzaz also found sensation intact throughout, full muscle strength, and deep tendon reflexes at 2+, bilaterally. AR 27, 251-52.

10

Based on the medical record, the ALJ found that Nifong could perform work consistent with the RFC determination. AR 26.

### 2. Activities of Daily Living

An ALJ may properly rely on inconsistencies between a claimant's allegations and his activities of daily living. *Thomas*, 278 F.3d at 958-59; *see also Tommasetti*, 533 F.3d at 1039 (ALJ may consider claimant's daily activities as one factor in assessing credibility.). As the ALJ noted, Nifong alleged she was unable to work because of arthritic pain in her hands, left knee and right ankle.[4] AR 26, 51, 171-73. She claims she can lift "around five pounds." AR 26, 55. She experiences pain in her knee at a rate of eight on a ten-point scale when she walks a little over a block or vacuums. AR 28, 52, 54. Her impairments affect her ability to climb stairs, walk over a block, vacuum, and lift more than five pounds. AR 52-55, 171-73. The ALJ found that Nifong's ability to vacuum once a week, dust, sweep every few days, shop unassisted for 1-2 hours at a shopping center, pick up her grandchildren from school, and cook "lend little credibility to her character." AR 28.

### 3. Retirement

The ALJ noted that Nifong "did not stop working due to rheumatoid arthritis or any physical conditions." AR 28. Nifong testified that she "retired" from her last job in 2007 because she believed the business was closing. AR 28, 46. Nifong argues she also testified that she could not do that job now "because . . . the arthritis has got[ten] worse in [her] hands." AR 47; JS 23. Nevertheless, Nifong does not dispute that she retired from her last job.

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we

---

[4] Contrary to Nifong's argument, the ALJ properly considered Nifong's testimony and statements on the Exertional Activities Questionnaire. AR 26, 28, 171-73; JS 15-16.

11

may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### F. Past Relevant Work

Nifong argues that the ALJ erred in finding that she could return to her past relevant work as a general clerk.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle*, 533 F.3d at 1166 (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id*. at 845; SSR 82-62; *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e).

The ALJ found that Nifong is capable of performing her past relevant work as a general clerk, as actually performed. AR 28. As the ALJ noted, Nifong performed her past relevant work as a general clerk at the sedentary level. *Id.* Nifong used her hands six hours in an eight hour workday, which the VE testified was frequent usage. AR 28, 59-60, 164. The VE testified that Nifong could perform her past job as a general clerk, as actually performed. AR 60. The ALJ was entitled to rely on the VE's testimony. "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss*, 427 F.3d at 1218.

Nifong argues that based on her subjective complaints and Dr. Wallace's limitations, she should be precluded from any sedentary or light work because of her alleged restriction of her bilateral hands and other restrictions. The ALJ's RFC that Nifong could perform light work with frequent handling and fingering

bilaterally was supported by substantial evidence. Nifong does not identify any inconsistency between the ALJ's RFC and her past relevant work as a general clerk as she actually performed it. Nifong has not shown error.

### G.  Medical Equivalency to Listed Impairment 14.09

Nifong alleges that the ALJ erred in "failing to evaluate [her] rheumatoid arthritis under Listing 14.09."

The claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L .Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (citation omitted) (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphasis in original). "'Medical equivalence must be based on medical findings.'

13

1  A generalized assertion of functional problems is not enough to establish
2  disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526). "An ALJ
3  must evaluate the relevant evidence before concluding that a claimant's
4  impairments do not meet or equal a listed impairment. A boilerplate finding is
5  insufficient to support a conclusion that a claimant's impairment does not do so."
6  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

7  Nifong contends that she meets Listing 14.09(A) or (B) because she has
8  "difficulty ambulating" and "has persistent inflammation in both hands (peripheral
9  joints) resulting in the inability to perform fine and gross movements effectively."
10  JS 26. Listing 14.09(A) requires an inability to ambulate effectively[5] or perform
11  fine or gross motor movements effectively.[6] 20 C.F.R. pt. 404, subpt. P, App. 1,
12  § 14.09(A). Listing 14.09(B) requires inflammatory arthritis that involves various
13  combinations of complications of one or more major peripheral joints or other
14  joints. 20 C.F.R. pt. 404, subpt. P, App. 1, § 14.09(B).

15  The ALJ did not expressly address Listing 14.09 in determining that
16  Nifong's severe impairment of rheumatoid arthritis did not meet or equal a listed
17  impairment. AR 25. Instead, the ALJ found that Nifong did not meet or equal
18  Listing 1.02 because:

19  there is no major dysfunction of a joint due to any cause
20  characterized by gross anatomical deformity and chronic joint pain

---

[5] Under the Listings, the inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00(B)(2)(b)(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.*

[6] Under the Listings, the inability to perform fine or gross motor movements effectively means "an extreme loss of function of both upper extremities." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00(B)(2)(c). The impairment must interfere "very seriously" with a claimant's ability to "independently initiate, sustain, or complete activities." *Id.* Examples of an inability to perform gross and fine movements include the inability to prepare simple meals and feed oneself and to take care of personal hygiene. *Id.*

14

and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint with either 1) involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, or 2) involvement of one major joint in each upper extremity, resulting in the inability to perform fine and gross movements effectively.

20 C.F.R. pt. 404, subpt. P, App. 1, § 1.02; AR 25. The ALJ's failure to mention whether he considered Listing 14.09 was not reversible error.

Nifong does not demonstrate that she meets or equals Listing 14.09. As discussed above, the ALJ relied upon the opinion of Dr. Moazzaz, who found that Nifong could ambulate effectively and could frequently perform fine and gross manipulative movements with both hands. AR 27-28, 250-52. Nifong testified that she has a cane, but she "ha[s]n't had to use it yet." AR 56. She also does housework, cooking, shopping and driving. AR 47-50, 53-54. In the Reply, Nifong argues that she meets Listing 14.09(D), but she does not contend or demonstrate that she suffers from two of the required constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) or the required marked limitation. Any error in not considering Listing 14.09 was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS HEREBY ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 20, 2013

 ALICIA G. ROSENBERG
 United States Magistrate Judge